**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARVA CROWDER, | |
| Plaintiff, | No. 17 C 381 |
| vs. | Judge BLAKEY |
| THOMAS BARRETT, *et al.* | |
| Defendants. | Jury Trial Demanded |

**DEFENDANT MARK GRIFFIN'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Defendant, former Assistant State's Attorney MARK GRIFFIN ("Defendant" or "Griffin"), by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 56 and N.D. Ill. Local Rules 56.1(a)(2), submits this memorandum of law in support of his motion for summary judgment, and states as follows:

**INTRODUCTION**

Plaintiff brings this § 1983 lawsuit against Chicago Police Detective Thomas Barrett ("Detective Barrett), Sergeant Thomas Guidice ("Sergeant Guidice"), and Detective Daniel Freeman ("Detective Freeman"), as well as Griffin, a former Cook County Assistant State's Attorney. Dkt. 104, at p. 3. Plaintiff alleges that, on February 14, 2015, he was arrested for domestic battery and subsequently questioned about an armed robbery. *Id.* at p. 5. According to Plaintiff, after he denied any knowledge of the robbery and asked for a lawyer, Griffin swore at him and stated to Detective Barrett, "I'm done playing games – do whatever you want to do with [Plaintiff]," as he left the room. *Id.* Plaintiff alleges that the statements made by Griffin to Detective Barrett were "illegal bad advice" and that Griffin was acting as an investigator. *Id.* at 4-5. Plaintiff states that the "advice" given by Griffin induced the detectives to create a fraudulent complaint for

preliminary examination (the "criminal complaint") against Plaintiff, thereby violating his constitutional rights.[1] *Id.* at pp. 5-6. Griffin now moves this Honorable Court for entry of summary judgment in his favor.

## STANDARD OF REVIEW

"[A] motion for summary judgment requires the responding party to come forward with the evidence that it has – it is the put up or shut up moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (internal quotations omitted). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact that must be decided by a jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986)); *see also* Fed. R. Civ. P. 56(c).

A genuine issue of material fact exists only if there is evidence to permit a reasonable jury to return a verdict for the non-moving party. *Egonmwan v. Cook County Sheriff's Dept.,* 602 F.3d 845, 849 (7th Cir. 2010). Neither "the mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, nor the existence of some metaphysical doubt as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), is sufficient to defeat summary judgment. Rather, the nonmoving party must go beyond the pleadings, and by his own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Although a court must view all facts and draw all reasonable inferences in favor of the nonmoving party in deciding a motion for summary judgment, *Samuelson v. LaPorte Cnty. Sch. Corp., 526 F. 3d 1046,* 1051 (7th Cir. 2008), those inferences must find support in the record – the court need not draw inferences that are supported

---

[1] Plaintiff's only surviving claim is a Fourth Amendment "*Manuel*" unlawful pretrial detention claim. All other claims asserted by Plaintiff have been dismissed. (Dkt. 103, at p. 3.)

by only speculation or conjecture. *Fischer v. Avanade, Inc.,* 519 F. 3d 393, 401 (7th Cir. 2008). Likewise, although credibility issues are generally left to the trier of fact, testimony used to oppose summary judgment that is so implausible or otherwise fantastical may be disregarded. *See, e.g., In re Chavin,* 150 F.3d 726, 728-29 (7th Cir. 1998).

## ARGUMENT

Plaintiff raises a single Fourth Amendment claim against Griffin for unlawful pretrial detention based upon the allegedly fraudulent criminal complaint. *See* Dkt 103, at p. 3; *See also* Dkt. 104 at pp. 5-6. Griffin is entitled to summary judgment because: 1) Griffin is entitled to absolute immunity; 2) Griffin had probable cause to approve felony charges against Plaintiff and therefore did not violate Plaintiff's constitutional rights; 3) there is no evidence in the record that Griffin engaged in any improper conduct which a reasonable trier of fact could conclude violated Plaintiff's constitutional rights; and 4) Griffin is entitled to qualified immunity.

## I.    GRIFFIN IS ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY.

Prosecutors are absolutely immune from § 1983 lawsuits for damages relating to the initiation of a prosecution and the presentation of the state's case. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *see also Hunt v. Jaglowski,* 926 F.2d 689, 692-93 (7th Cir. 1991). When presented with an immunity defense, a functional test is used to determine whether absolute or qualified immunity applies; "[t]he nature of the function performed, not the identity of the actor who performed it" determines which type of immunity controls. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Generally speaking, if the prosecutor acted in the role of advocate for the state, absolute immunity applies. If he instead acted in the role of an investigator, only qualified immunity applies. *Id.* Prosecutorial immunity is not limited only to the bringing of charges and the presentment of the state's case. Instead, immunized conduct includes "actions preliminary to the

initiation of a prosecution" and comprises "[p]reparation, both for the initiation of the criminal process and for a trial, [and] may require the obtaining, reviewing, and evaluating of evidence." *Imbler*, 424 U.S. at 431 n.33; *see also Buckley*, 509 U.S. at 273 (part of a prosecutor's role as "advocate for the State involve[s] actions preliminary to the initiation of a prosecution" and "include[s] the professional evaluation of the evidence assembled by the police…."). Ultimately, the functional test "focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question of whether it was lawful." *Id*. at 271.

The record is clear that Griffin engaged in no investigative activities with respect to Plaintiff's case and is therefore absolutely immune from suit. At the time of Plaintiff's arrest for the Radio Shack robbery, Griffin was assigned to the Cook County State's Attorney's Felony Review unit. Joint Statement of Undisputed Material Facts ("JSOF") ¶ 39. Griffin's responsibilities as a felony review ASA included the review and evaluation of evidence gathered by the detectives, including interviewing witnesses, victims, and suspects. JSOF ¶ 39. The record shows that Griffin conducted an extensive review of the evidence collected by the police in order to determine whether to initiate charges against Plaintiff.

Through his conversations with Detective Barrett, Griffin learned that Plaintiff was in custody and had already been questioned by detectives regarding his role in the Radio Shack robbery. JSOF ¶¶ 41-42. Griffin learned that police had tracked the stolen merchandise to a gas station on the south side of Chicago, and that they had obtained security video from the gas station showing Plaintiff entering the convenience store in a black and white jacket. JSOF ¶ 43. Griffin learned that police subsequently tracked the stolen merchandise to a house at 710 W. 81st Street in Chicago, and found Plaintiff present at the scene alongside some of the stolen Radio Shack property, a firearm, and several items of clothing including a black and white herringbone jacket

and a brown jacket with a fur collar. JSOF ¶ 44. Griffin then viewed the gas station surveillance video. JSOF ¶ 45. The faces of both offenders who robbed the Radio Shack were visible, as was the black and white jacket on the offender who the officers identified as being Plaintiff. JSOF ¶ 45. Griffin learned that police had interviewed the two victims of the robbery, Martha Trujillo ("Trujillo") and Qwentessa Gaston ("Gaston"), and that approximately two weeks after the robbery Gaston picked Plaintiff out of a photo array. JSOF ¶ 46. Griffin would later learn that Gaston had voluntarily viewed an in-person lineup including Plaintiff, and selected Plaintiff as the offender who robbed the Radio Shack. JSOF ¶¶ 62-73.

Through his conversations with Detective Barrett, Griffin also learned that the jacket the offender who police identified as Plaintiff in the surveillance video was subsequently subjected to DNA analysis, and that Plaintiff's DNA was one of two male DNA samples identified. JSOF ¶ 47. Griffin then conducted his own interviews of the victims before ever speaking to Plaintiff, and Gaston reiterated to him that she had selected the offender from a police photo array. JSOF ¶ 48.

After reviewing the aforementioned evidence, Griffin attempted to take a statement from Plaintiff. JSOF ¶¶ 50, 53-54. The parties dispute what happened while Griffin was speaking to Plaintiff. According to Plaintiff, during the interview "…Griffin begins to getting very angry and started to threating plaintiff… Griffin begin to use profanity saying "fuck" your lawyer Griffin ten yell in I'm done playing games do whatever you want to do with this asshole detectives Griffin then jumps up and out of his seat and walk out the room slamming the door." Dkt. 104, at p. 5. Plaintiff then claims, without evidence, that subsequent to the interview, Griffin advised Detective Barrett to "induce Barrett to create a fraudulent government document which is a complaint for a preliminary examination which was designed to gain jurisdiction over a suspect to determine whether this is probable cause to bind subject over for trial which this particular document was

used to gain jurisdiction over plaintiff." *Id.* at p. 6. Griffin categorically denies cursing at, yelling at, or threatening Plaintiff, falsifying evidence, attempting to influence Detective Barrett through his behavior, or of possessing any knowledge or belief that someone else had fabricated evidence against Plaintiff. *See* JSOF Ex. 2 (Declaration of Mark Griffin), at ¶¶ 22-28, 35; JSOF ¶¶ 84-85. Regardless, this fact dispute is immaterial because Griffin was acting exclusively in his role as a prosecutor during the statement and is absolutely immune from suit.

Griffin engaged in an extensive review of the evidence, which included speaking with the investigating officers as to the evidence against Plaintiff, interviewing victims, interviewing the suspect, and reviewing surveillance footage. JSOF ¶¶ 41-48; *See also Imbler*, 424 U.S. at 431 n.33; *see also Buckley*, 509 U.S. at 273. Furthermore, Griffin's effort to take Plaintiff's statement was clearly a prosecutorial act. It is well established that taking a suspect's statement following an interrogation is part of a prosecutor's role in evaluating and preparing evidence. *See Hunt v. Jaglowski*, 926 F.2d 689, 692-93 (7th Cir. 1991); *see also Andrews v. Burge*, 660 F. Supp. 2d 868, 878 (N.D. Ill. 2009). To that end, it is undisputed that interviewing witnesses and evaluating evidence to determine whether to file charges is "clearly part of prosecutor's role as advocate for the State." *See Patterson v. Burge*, 03 C 4333, 2010 U.S. Dist. LEXIS 103966, at * 28 (N.D. Ill. Sep. 27, 2010). As such, determining whether absolute or qualified immunity applies, courts have focused on whether the prosecutor participated only in the taking of the statement, or whether he participated in the interrogation leading to the statement. *Compare Hunt*, 926 F.2d at 692-94 (holding that prosecutor who was on notice of physically coerced and involuntary confession was immune as he took no part in the physical coercion), *with Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1045-46 (N.D. Ill. 2016) (rejecting absolute immunity argument predicated on *Hunt* as facts existed from which a jury could infer that the ASAs actively participated in coercive

interrogations). As *Hunt* and its progeny direct, a prosecutor is entitled to absolute immunity for taking a suspect's statement even if he has knowledge that the statement is false or involuntary.

Because Griffin reviewed evidence and took statements from victims and the suspect to the commission of a crime, his actions were solely for the initiation of Plaintiff's prosecution and were exclusively prosecutorial. Griffin is therefore absolutely immune from suit and is entitled to summary judgment.

## II.   GRIFFIN HAD PROBABLE CAUSE TO CHARGE PLAINTIFF.

In the absence of absolute immunity, Griffin is still entitled to summary judgment because he had probable cause to charge Plaintiff for his role in the Radio Shack robbery. The Fourth Amendment prohibits detention without probable cause. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918-919 (2017). In this case, Griffin had probable cause to charge Plaintiff for his role in the Radio Shack robbery both before and after interviewing Plaintiff. Accordingly, Griffin is entitled to summary judgment.

The evidence pointing to Plaintiff's guilt which was known to Griffin at the time that he approved felony charges is overwhelming. Plaintiff was positively identified by one of the victims from a photo array and later in a lineup. JSOF ¶¶ 46, 48, 73-74. Plaintiff's image and clothing were captured on a security camera immediately following the crime. JSOF ¶¶ 43, 45. Plaintiff was located at an address in Chicago alongside some of the stolen merchandise, alongside a handgun, and the jacket which was visible in the security video. JSOF ¶ 44. That jacket later tested positive for Plaintiff's DNA. JSOF ¶ 47. There was more than enough probable cause for Griffin to suspect Plaintiff of committing the robbery regardless of Plaintiff's self-interested denial. Consequently Griffin approved felony charges against Plaintiff. JSOF ¶ 75. Griffin's determination of probable

cause was ratified by the Honorable Sandra Ramos on February 20, 2015 at a preliminary hearing where the court made a finding of probable cause. JSOF ¶ 82.

Finally, even if Griffin had instructed the officers to trump up evidence against Plaintiff after the interview, he would *still* be entitled to summary judgment because probable cause existed prior to the falsification of the criminal complaint [emphasis added]. *Young v. City of Chi.*, 987 F. 3d 641 (7th Cir., 2021) (Officers were entitled to summary judgment on a Fourth Amendment pretrial detention claim when they had probable cause to arrest the Plaintiff, and then subsequently fabricated evidence against him.) In this case, Griffin knew of the positive identification by. Gaston, the surveillance video, Plaintiff's jacket and the positive DNA sample found on Plaintiff's jacket, and Plaintiff's presence at the same residence as the stolen merchandise and a firearm prior to the alleged fabrication. JSOF ¶¶ 42-48, 50. The evidence known to Griffin before the alleged fabrication is more than enough to establish probable cause to believe Plaintiff robbed the Radio Shack.

Griffin had probable cause to charge Plaintiff with robbing the Radio Shack. Therefore, Plaintiff's pretrial detention was lawful and Griffin did not violate his Fourth Amendment rights. Accordingly, Griffin is entitled to summary judgment.

## III.   GRIFFIN DID NOT FRAUDULENTLY CREATE ANYTHING WHICH WAS USED AGAINST PLAINTIFF.

Even if absolute immunity does not apply and the court finds a question of fact as to probable cause, Griffin is still entitled to summary judgment because he did not fraudulently create, and did not induce the Detectives to fraudulently create anything against Plaintiff. Plaintiff accuses Griffin of "induc[ing] Barrett to create a fraudulent… complaint for a preliminary examination...." against him through his allegedly threatening actions during the interview between Plaintiff, Griffin, and Detective Barrett. Dkt. 104, at pp. 5-6. There is no evidence in the

record that could lead a reasonable juror to conclude that Griffin personally committed or implicitly condoned any fabrication or fraud which violated Plaintiff's constitutional rights. Griffin is therefore entitled to summary judgment.

At the outset, Plaintiff has produced no evidence of fraud in the creation of the criminal complaint, and Griffin is unclear as to what exactly Plaintiff asserts is fraudulent about that document. *See* Dkt. 104; *See also* Ex. 1. Plaintiff refers to the criminal complaint as a "fraudulent government document" but the record is devoid of evidence of fraud with respect to that document. Dkt. 104, at p. 6. Griffin did not instruct Detective Barrett to falsify the criminal complaint and had no reason to believe that it was falsified. JSOF ¶ 85. Because Plaintiff has not produced any evidence of fraud leading to Plaintiff's pretrial detention, Plaintiff's claim fails, and Griffin is entitled to summary judgment. *Eberts* 569 F.3d at 767.

Based upon Plaintiff's answers at his deposition, Griffin speculates that Plaintiff believes, as he repeatedly asserted in the underlying criminal matter and this action, that the criminal complaint was faulty because it was prepared by Detective Barrett and signed by Detective Freeman, and not by Gaston. *See* JSOF Ex. 1, at 90:23-24, 91:1-4; see also ECF 104, at p. 6 ("The advice Griffin gave to Barrett induce Barrett to create a fraudulent government document which is a complaint for a preliminary examination…. [A]lso Detective Freeman sign his name on this fraudulent document as well to make it it [sic] look authentic…")

Plaintiff is correct that one of the detectives signed the criminal complaint against him for the Radio Shack robbery. JSOF ¶ 80. If Plaintiff's claim is grounded in the detective signing the criminal complaint in place of Gaston, it fails as a matter of law. While Illinois law requires that a criminal complaint be properly sworn, § 1983 requires a Plaintiff to show a violation of his constitutional rights or federal law. *Gramenos v. Jewel Cos.*, 797 F. 2d 432, 434 (7th Cir., 1986).

(Affirming summary judgment for police officers who failed to property attest to a criminal complaint because violation of Illinois' law requiring a criminal complaint be sworn is not a violation of federal law or the U.S. constitution and cannot form the basis for a § 1983 claim.) Provided the court reads, as Griffin does, that the allegedly faulty verification of the criminal complaint forms the basis for Plaintiff's allegations of fraud, Griffin is entitled to summary judgment as a matter of law.

Even assuming, *arguendo,* that the court finds some evidence to support Plaintiff's theory that the criminal complaint was fraudulent, Griffin is still entitled to summary judgment because he was not personally involved in its preparation and was not aware of the fraud. Personal involvement of the Defendant is a prerequisite to liability under §1983. *Wolf-Lillie v. Sonquist*, 699 F. 2d 864, 869 (7th Cir., 1983) ("section 1983 creates a cause of action based upon personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation."; See also *Minix v. Canarecci*, 597 F. 3d 824, 833 (7th Cir., 2010) ("[I]ndividual liability under §1983 requires personal involvement in the alleged constitutional deprivation.") Personal involvement is found where a state actor directed, or knew of and condoned, the constitutional violation. *Mithcell v. Kallas*, 895 F. 3d 492, 498 (7th Cir., 2018).

There is no evidence to suggest that Griffin himself "manufactured" the criminal complaint. It was Detective Barrett who prepared and signed the criminal complaint. JSOF ¶ 80. Furthermore, the record is devoid of any facts to support Plaintiff's subjective inference that Griffin directed Detective Barrett to fabricate the criminal complaint. Plaintiff never saw or spoke to Griffin again and didn't witness any other interactions between Griffin and Detective Barrett outside of the brief interview at the police station. JSOF ¶¶ 51, 58-59. Griffin did not intend for

Detective Barrett to interpret his behavior as advice. JSOF ¶ 84. There are no facts and no evidence apart from Plaintiff's wholly subjective conclusion to support the notion that Griffin intended to affect the police with his behavior or induce them to take any actions. There is also no evidence that the officers acted on the alleged threat, and even if the officers did create a fraudulent criminal complaint against Plaintiff, there is no evidence that Griffin was aware that the officers actually acted on the so-called threat. On the contrary, Griffin had no reason to believe any of the police materials were fraudulent, and had he been aware of fraud by the officers, he would not have approved felony charges. JSOF ¶ 85.

Plaintiff's theory of tortious behavior by Griffin is little more than reverse engineering from his base conclusion that his criminal prosecution was unlawful. Plaintiff's inference of a threat, or speculation as to what happened outside of his presence, is entitled to no weight by this Court in weighing whether to award Griffin summary judgment. *Catrett*, 477 U.S. at 324; *Fischer* 519 F. 3d at 401.

There is no evidence that any of the defendants fabricated anything at all against the Plaintiff. Even if Det. Barrett violated state law by signing the criminal complaint in lieu of Gaston, Griffin is entitled to summary judgment because that act is not actionable under § 1983. And finally, even if there is some evidence in the record to support Plaintiff's charge of a fraudulent document which caused the alleged violation of his Fourth Amendment rights, there is no evidence that Griffin had any personal involvement or awareness of its preparation or filing. For all of the above reasons, Griffin is entitled to summary judgment.

## IV.    GRIFFIN IS ENTITLED TO QUALIFIED IMMUNITY.

Even if absolute prosecutorial immunity does not apply, the court rejects Griffin's probable cause to charge Plaintiff with the Radio Shack robbery, and finds that there is a material dispute

as to whether Griffin participated in the allegedly fraudulent criminal complaint, Griffin is still entitled to qualified immunity. No Court has *ever* established that a prosecutor's verbal threat to a suspect during a statement, which later induced police to fabricate a charging document against the suspect, is a violation of Plaintiff's Fourth Amendment rights [emphasis added.] Griffin is therefore entitled to qualified immunity and summary judgment.

It is well settled that public officials performing discretionary functions are shielded from liability for civil damages unless their conduct violates a clearly established statutory or constitutional right. *Burns v. Reed,* 44 F.3d 524, 526 (7th Cir. 1995). The policy behind granting public officials qualified immunity from lawsuits is to protect them "from undue interference with their duties and from potentially disabling threats of liability." *Harlow,* 457 U.S. at 806. The qualified immunity doctrine also stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions. *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). The immunity grants ample room for mistaken judgments by protecting "all but the plainly incompetent or those who knowingly violated the law." *Malley v. Briggs,* 475 U.S. 335, 343 (1986).

Qualified immunity is a two-pronged analysis requiring the court to determine: (1) whether the record evidences a constitutional violation; and (2) if so, whether the right violated was clearly established at the time the violation occurred. *Saucier v. Katz*, 533 U.S. 194, 121 (2001). To defeat qualified immunity, the burden is on the plaintiff to demonstrate that the alleged violation of his rights was 'clearly established' at the time of the alleged violation. *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017). To be clearly established, the right's contours must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right...." *Id*. (quoting *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)). Although Plaintiff need not point to an

12

identical case finding the alleged conduct unlawful, a plaintiff must point to precedent placing the "statutory or constitutional question beyond debate," *Mullenix*, 136 S.Ct. at 308, or otherwise persuade the court that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully. *See Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008).

In examining qualified immunity, "the right allegedly violated must be defined at the appropriate level of specificity." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). To that end, the Supreme Court has "repeatedly told courts ... not to define clearly established law at a high level of generality." *Al-Kidd*, 563 U.S. at 742. Instead, the clearly established law must be "particularized to the facts of the case." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir. 1987). ("[T]he test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted."). Ultimately, "the crucial question [is] whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014); *see also Saucier*, 533 U.S. at 205 ("The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct . . . .").

Plaintiff's claim against Griffin fails both prongs of the Qualified Immunity test. Griffin conclusively argues above that there is no evidence of his role in the alleged violation of Plaintiff's Fourth Amendment rights in the record. That said, even if the court disagrees with Griffin's reading of the record, there is no authority establishing that a prosecutor's threat, which later induces the police to fraudulently create a criminal complaint against Plaintiff, constitutes a constitutional violation by the prosecutor. Adhering to the Supreme Court's admonition that the right must be "particularized to the facts of the case," *Anderson*, 483 U.S. at 640, the question is: was it clearly

13

established law in 2015 that a prosecutor violates the rights of a suspect when, after taking the suspect's statement and without approving charges, unknowingly induces the police to fabricate a criminal complaint against him? The question begs the answer as there is no precedent to establish that a prosecutor should expect officers to fabricate a criminal complaint against a suspect if the prosecutor yells at him.

Because it cannot be said that Griffin's conduct violated any of Plaintiff's clearly established constitutional rights, Griffin is entitled to qualified immunity and summary judgment should be granted.

## <u>CONCLUSION</u>

WHEREFORE, Defendant, former Assistant State's Attorney Mark Griffin, pursuant to Federal Rule of Civil Procedure 56, respectfully requests that this Honorable Court enter an Order: (a) granting summary judgment in his favor and against Plaintiff; (b) assessing his costs against Plaintiff; and (c) providing Griffin with any other necessary and just relief.

Respectfully submitted,

*/s/ Edward M. Brener*
Edward M. Brener
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-5971
edward.brener@cookcountyil.gov
*Attorney for Defendant Mark Griffin*