## THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

Marva Crowder**,**               )

                                    )

                   Plaintiff,      )

                                    )     Case No. 17 C 0381

      v.                         )

                                    )     Judge John Robert Blakey

Thomas Barrett, et al.,      )

                                    )

                 Defendants.    )

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Marva Crowder brings this *pro se* civil rights action under 42 U.S.C § 1983, alleging unlawful pretrial detention. Specifically, Plaintiff alleges that the complaint for preliminary examination proffered in support of an armed robbery charge filed against him was fraudulent. Defendants have moved for summary judgment. Defendant Mark Griffin, formerly an assistant state's attorney, seeks judgment in his favor because: (1) he is entitled to absolute immunity or in the alternative, qualified immunity; (2) probable cause existed to approve felony charges against Plaintiff; and (3) there is no evidence in the record that Griffin engaged in improper conduct. *See* [187]. The remaining Defendants, Chicago Police Officers Thomas Barrett, Thomas Giudice, Daniel Freeman and the City of Chicago,[1] argue

---

[1] The City of Chicago remains a Defendant in this matter only because the city may be required to indemnify its officers should a judgment be entered against them. 745 ILCS 10/9-102; *see Griffin v. Meagher*, No. 09-cv-1477, 2009 WL 5174684, at *5 (N.D. Ill. Dec. 21, 2009) (observing that Section 10/9-102 makes local municipalities liable for payment of tort judgment against its employees acting within the scope of their employment). Plaintiff has not stated any claim against the City under § 1983. *See, e.g.*, [166].

that they are entitled to summary judgment because: (1) probable cause bars Plaintiff's Fourth Amendment claim; (2) the City Defendants did not falsify documents; (3) the doctrine of *Heck v. Humphrey* bars Plaintiff's claims; (4) collateral estoppel bars Plaintiff's claims; (5) Defendants Giudice and Freeman were not personally involved in the alleged violation of Plaintiff's rights; and (6) the City Defendants are entitled to qualified immunity. *See* [192]. For the reasons explained below, the Court grants Defendants' motions [187] [192]. The Court denies Plaintiff's motions seeking sanctions for perjury [217] [218] [219]. Given the disposition of this case, the Court also denies the City Defendants' motion to consolidate this case with *Crowder v. Harris*, No. 20 C 5137 [196].

## **BACKGROUND**

Before turning to the merits of Defendants' motions, the Court considers two preliminary matters: Plaintiff's motions to strike and the impact of Local Rule 56.1 on the parties' submissions.

### I. **Plaintiff's Motions to Strike**

On September 7, 2021, Plaintiff filed three motions [217], [218], and [219], which the Court interpreted as motions to strike the declarations that Defendants submitted in support of their summary judgment motions. *See* [220]. In subsequent filings, Plaintiff has stated that the Court misinterpreted these motions: he states that he in fact was not asking the Court to strike the declarations but instead was asking the Court to deny Defendants' motions for summary judgment due to perjury; he asks the Court to impose penalties under a federal law pertaining to false

2

declarations before a grand jury or court. *See*, *e.g.*, [226] at 2. The Court denies the requests for two reasons. First, based upon this Court's review of the pleadings, Plaintiff's allegations of perjury lack merit. Second, even if that were not the case, this Court has no authority to pursue perjury charges in the manner Plaintiff seeks. *See United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case."); *Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1996) (court does not have jurisdiction to order that a criminal complaint be filed).

## II. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR

56.1(e).  In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact.  Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3).  A district court "is not required to wade through improper denials and legal argument in search of a genuinely disputed fact." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (internal citation and quotation omitted).  Mere disagreement with the opponent's factual statement is inadequate unless made with appropriate citation to the record. *Id.*

Because Plaintiff is proceeding *pro se*, Defendants jointly served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment," as required by Local Rule 56.2.  [190].  Defendants also jointly submitted a Statement of Facts, to which Plaintiff responded.  *See* [189], [204].[2]  Plaintiff also submitted his own statement of additional facts.  [205].

The Court notes, however, that the vast majority of Plaintiff's responses and purported factual statements lack citations to the record or are otherwise unsupported by the record.  Further, they are in large part irrelevant, argumentative, or consisting of legal arguments or mere conclusory statements.

As such, the Plaintiff bears the consequences of his failures to comply with the rules of procedure.  For example, Plaintiff was questioned and held on the armed

---

[2] Plaintiff attempted to respond again to Defendants' joint Statement of Facts as part of his brief in response to the City Defendants' memorandum of law, *see* [222] at 1–4, 8–10.  The Court declines to consider this duplicative factual response, which fails to comply with LR 56.1(e).

robbery charge that is the subject of this complaint after initially being arrested for an unrelated domestic battery. Plaintiff contends that something went wrong in the process of holding him on the armed robbery, but he is unable to coherently explain how his constitutional rights were violated, and many of his contentions and objections in response to Defendants' motions for summary judgment find no basis in the record or the operative complaint, [104].

Such objections illustrate Plaintiff's failure to follow proper procedure: while he objects to most of Defendants' statements of facts, his objections fail to pertain to the content of the statements themselves, and instead remain premised on the notion that the armed robbery is unrelated to his claim and that statements of fact concerning the robbery are prejudicial. For example, in response to a statement of fact concerning a lineup for the robbery, Plaintiff asserts the following:

> "Plaintiff disputes [D]efendants['] Statement of Facts and objects to the evidence in support of [sic]. Plaintiff filed his [§] 1983 complaint on 1-17-17 in regards to the only arrest and charges of domestic battery under booking number 19061928[,] incident number HY151105. [P]laintiff has never been prosecuted or arrest[ed] for armed robbery under incident number HW 171572."

See [204] at ¶ 70. In support of this statement, Plaintiff cites the misdemeanor domestic battery complaint, the felony armed robbery complaint, his fingerprints, and what appear to be portions of police reports regarding his February 14, 2015, arrest. See [205] at 11–12, 16–17, 18, 21–24. Essentially, Plaintiff's objection contends that the Defendants arrested or prosecuted him under the wrong booking and/or incident numbers or that he was maliciously prosecuted because the armed robbery charge was filed under the same "Records Division" number as the domestic

5

battery for which he was arrested on February 14, 2015. *See*, *e.g.*, [204] at ¶¶ 10–11, 48. Plaintiff's objections are irrelevant and/or otherwise not properly supported by the record. Plaintiff's Fourth Amendment claim in this case arises from the investigation of this robbery, not the domestic battery. His references to incorrect booking or Records Division numbers used by the Chicago Police Department do not describe a violation of his federal rights. *See Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003) (explaining that § 1983 "protects plaintiffs from constitutional violations, not violations of state law or . . . departmental regulations").

Because of the inadequacy of such responses by the Plaintiff, the Court accepts Defendants' factual statements as true unless otherwise noted. The Court will entertain Plaintiff's factual statements and responses only to the extent they are supported by the record, or to the extent he could properly testify himself about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013).

The Court therefore will recite the facts based upon Defendants' Local Rule 56.1 statement and Plaintiff's factual assertions that are properly supported or about which he could testify, and then decide whether, on that factual record, Defendants are entitled to summary judgment. In so doing, the Court remains mindful that although Plaintiff has largely failed to comply with Local Rule 56.1, Defendants must still demonstrate that they are entitled to judgment as a matter of law. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). With these guidelines in mind, the Court turns to the facts of this case.

### III.    Factual Background

Plaintiff is a resident of Cook County, Ill. [189] at ¶ 1.  At all times relevant, Defendant Mark Griffin was a Cook County Assistant State's Attorney (ASA Griffin), *Id.* at ¶ 2, and Defendants Thomas Barrett, Thomas Giudice, and Daniel Freeman were employed by the Chicago Police Department.  *Id.* at ¶ 3.

In the evening hours of February 26, 2013, two offenders robbed a Radio Shack store located at 6643 South Pulaski, Chicago; Detective Barrett was assigned to investigate.  *Id.* at ¶ 6.  On that date, Detective Barrett went to the Radio Shack and met with the two robbery victims, Martha Trujillo and Qwentessa Gaston, both employees of Radio Shack.  *Id.* at ¶ 7.  Trujillo and Gaston informed Detective Barrett that two offenders entered the Radio Shack through the front door, with one brandishing a small handgun.  *Id.* at ¶ 8.  The robbers ordered Gaston to open the safe but became upset when Gaston told them it would take 10 to 12 minutes to do so.  *Id.* at ¶ 9.  The offenders told her instead to open a locked gate near the rear of the store, filled bags with electronic equipment (including three X-Box 360 Game Systems, two Sony Play Station game systems, five Kindle Tablets, two new color tablets, six digital tablets, forty flash drives, forty memory cards, thirteen Galaxy 3 cell phones, and two Razor cell phones) and $250 dollars, and ordered Gaston and Trujillo into the bathroom.  *Id.* at ¶¶ 9, 10, 13.  One of the bags taken by the offenders contained an electronic tracking device.  *Id.* at ¶ 12.

As part of his investigation, Detective Barrett viewed surveillance video of the robbery.  *Id.* at ¶ 14.  When reviewing the video, Detective Barrett noticed that one

of the robbers was wearing a long brown jacket with a fur collar and black pants; the other, who was brandishing a firearm, was wearing a short gray herringbone jacket, a baseball cap, and black scarf. *Id.* at ¶ 15.

Later that same day, February 26, 2013, Radio Shack security informed Chicago police that an electronic tracking device in one of the stolen bags was currently located at 6300 South Damen, Chicago. *Id.* at ¶ 16. Chicago Police Officer Chioka then obtained surveillance video from 6300 South Damen, which is a gas station. *Id.* at ¶ 17. Detective Barrett reviewed the surveillance footage from the gas station, which showed the two Radio Shack offenders at the gas station, wearing the same clothing shown in the surveillance video. *Id.* at ¶ 18. Still later that day, Radio Shack notified the police that the tracking device was now located at or near 688 West 81st Place, Chicago. *Id.* at ¶ 19. Detective Barrett and two other officers went to the area of 688 West 81st Place. *Id.* at ¶ 20. Within a block of that location, Detective Barrett observed two individuals who matched the description of the persons involved in the Radio Shack robbery. *Id.* at ¶ 21. Detective Barrett, along with other officers, approached the homeowner of 710 West 81st Place, Shavon Brown, and obtained consent to search the residence. *Id.* at ¶ 22.

Upon obtaining consent, Detective Barrett, Detective Phipps, Sgt. Cannon, Officer Wilke, and Officer Hayes searched the residence. *Id.* at ¶ 23. Plaintiff was inside the home during the search. *Id.* at ¶ 24. While searching this residence, Detective Barrett and the other officers located clothing matching that worn by the Radio Shack offenders—a short grey jacket and a long brown jacket with a fur collar—

8

as well as items taken in the robbery— memory cards, a Samsung Galaxy phone, and a white Radio Shack bag containing an iPad mini, Xbox game system, tablets, three Galaxy 3 phones, flash drives, and various open boxes. *Id.* at ¶ 25.

Subsequently, Chicago police detectives prepared a photo array to present to the victims of the Radio Shack robbery. The array included the Plaintiff (Derrick Holmes, a/k/a Marva Crowder) as well as other individuals who looked similar to the Plaintiff. *Id.* at ¶ 26. Chicago Police Detective Rempas showed Gaston the photo array and she identified Plaintiff as one of the people who robbed the Radio Shack at 6643 South Pulaski on February 26, 2013. *Id.* at ¶ 27.

Multiple items seized during the search of the residence at 710 West 81st Place, Chicago (including a black hat, black jacket, black knit hat, two black knit gloves, a black and white herringbone coat, and a black triangular piece of fabric) were submitted to the Illinois State Police Division of Forensic Services, Forensic Science Center in Chicago (ISP Crime Lab), for analysis. *Id.* at ¶ 28. On or about December 19, 2014, Kathleen Kozak, CODIS administrator for the ISP Crime lab, notified Detective Mateo that a portion of herringbone coat recovered during the search of the residence matched to a DNA profile on file for the Plaintiff. *Id.* at ¶ 29. The herringbone coat also matched the description of the clothing Gaston described one of the offenders wearing during the robbery. *Id.* at ¶ 30.

On December 27, 2014, Detective Barrett submitted an investigative alert for Plaintiff based on the DNA match. *Id.* at ¶ 31. On or about Jan. 13, 2015, the ISP Crime Lab also sent Detective Barrett a letter informing him that the DNA on the

black and white herringbone coat matched the Plaintiff.  *Id.* at ¶ 32.

On February 14, 2015, another police officer informed Detective Barrett that Plaintiff had been arrested on a domestic battery charge.  *Id.* at ¶ 33.  Defendants Barrett, Giudice, and Freeman did not investigate Plaintiff for domestic battery and are unaware of the details of this investigation.  *Id.* at ¶ 34.  But Detective Barrett did request that Plaintiff be transported to the 8th District police station for an interview regarding the 2013 Radio Shack robbery.  *Id.* at ¶ 35.  Detective Barrett read Plaintiff his *Miranda* rights on February 14, 2015, and then along with Detective Rooney, interviewed Crowder for about ten minutes.  *Id.* at ¶ 36.  During this interview, Plaintiff denied involvement in the Radio Shack robbery and denied owning the black and white/gray herringbone coat.  *Id.* at ¶ 37.  Because the robbery victim, Gaston, was not available for an in-person line-up on February 14, 2015, Detective Barrett's investigation continued into the next day.  *Id.* at ¶ 38.

As of February 2015, ASA Griffin was assigned to the Felony Review Unit for the Cook County State's Attorney's Office.  *Id.* at ¶ 39.  In that capacity, ASA Griffin reviewed and evaluated evidence gathered by police and decided whether to approve the initial filing of felony charges against a suspect.  *Id.*  In some circumstances, his review required him to interview victims, witnesses, and/or suspects about the circumstances relating to the alleged felony offenses.  *Id.*  On February 14, 2015, ASA Griffin was assigned to review the Chicago Police Department's request for approval of felony charges against Plaintiff for the Radio Shack robbery.  *Id.* at ¶ 40.

When ASA Griffin arrived at the 8th District police station, he spoke with

Detective Barrett, who informed him that Plaintiff had been arrested and questioned about his role in the Radio Shack robbery. *Id.* at ¶¶ 40, 41. Detective Barrett also informed ASA Griffin of the details of the investigation, including actions he and other detectives had taken to identify Plaintiff as one of the robbers, and his conversations with Plaintiff on February 14, 2015. *Id.* at ¶ 42. Detective Barrett further informed ASA Griffin that a GPS tracking device was hidden with the stolen merchandise, that the device was tracked to a gas station on the south side of Chicago, and that security video from the gas station showed Plaintiff entering a convenience store in a black and white jacket. *Id.* at ¶ 43. Detective Barrett told ASA Griffin that the tracking device was ultimately tracked to a home at 710 West 81st Place in Chicago, that Detective Barrett and other officers found Plaintiff inside that home, along with some of the property stolen in the Radio Shack robbery, a firearm and several items of clothing, including a black and white herringbone jacket and a brown jacket with a fur collar; he told ASA Griffin that he did not arrest Plaintiff at that time. *Id.* at ¶ 44.

ASA Griffin further viewed the gas station surveillance video. The faces of both offenders who robbed the Radio Shack were visible, as was the black and white jacket on the offender who had been identified as the Plaintiff. *Id.* at ¶ 45. Detective Barrett told ASA Griffin that Gaston had also identified Plaintiff in a photo array. *Id.* at ¶ 46. Detective Barrett also informed ASA Griffin that officers had sent the clothing recovered from the 710 West 81st Place residence to the ISP Crime Lab for analysis, and that a sample from the black and white jacket contained two male DNA

11

samples, one of which belonged to Plaintiff. *Id.* at ¶ 47.

ASA Griffin then interviewed Trujillo and Gaston, the victims of the robbery, and Gaston reiterated that she had identified one of the robbers in a photo array. *Id.* at ¶ 48. ASA Griffin then interviewed Plaintiff, who was taken from his holding cell to an interview room at the 8th District police station; Detective Barrett also was present during this interview. *Id.* at ¶ ¶ 50, 51. Plaintiff acknowledged in his deposition that he has no information about what ASA Griffin knew about Plaintiff or the Radio Shack robbery before they met. *Id.* at ¶ 49. Plaintiff's interview with Detective Barrett and ASA Griffin lasted about 15 minutes. *Id.* at ¶ 51. Plaintiff was not physically harmed during the interview. *Id.* at ¶ 52. ASA Griffin told Plaintiff that he was a prosecutor and an attorney, but not his attorney or an attorney for anyone else in the case. *Id.* at ¶ 53. He read Plaintiff *Miranda* warnings, and Plaintiff indicated that he understood his rights and wanted to speak with ASA Griffin. *Id.* at ¶¶ 53, 54. During this interview, Plaintiff denied any involvement in the Radio Shack robbery and refused to answer any other questions; ASA Griffin then immediately terminated the interview and left the room. *Id.* at ¶ 55. Plaintiff contends that ASA Griffin said something to Detective Barrett to the effect of, "Fuck it. Do whatever you want to do to this guy," and walked out of the room. *See* [204] at ¶ 55; [189-1] at 50:20-51:24.

According to Detective Barrett, ASA Griffin never made any threats to Plaintiff. [189] at ¶ 56. After the interview, Detective Barrett took Plaintiff to a holding cell. *Id.* at ¶ 57. Plaintiff never saw or interacted with ASA Griffin again.

*Id.* at ¶ 58. Plaintiff also never witnessed any other interactions between ASA Griffin and Detective Barrett. *Id.* at ¶ 59.

On February 15, 2015, at 5:30 p.m., Plaintiff met with his attorney, Gregory LaPappa, at the 8th District police station. *Id.* at ¶ 60. At some point after his second interview, Plaintiff agreed to take part in a police lineup, which included three to five other African American men. *Id.* at ¶ 61. Detective Barrett facilitated the lineup by locating "fillers" (other individuals of similar appearance to Plaintiff) and arranging for Detective Villa to conduct the lineup. *Id.* at ¶ 62.

Detective Barrett then called Gaston, one of the robbery victims, and informed her that CPD had a suspect in custody for the Radio Shack robbery. *Id.* at ¶ 63. Detective Barrett went to Gaston's place of work and talked to her about whether she wanted to pursue criminal charges and whether she would participate in an in-person lineup. *Id.* at ¶ 64. Gaston agreed to participate in the lineup at the 8th District police station. *Id.* at ¶¶ 65–67.

Detective Barrett then brought Plaintiff into the lineup room and arranged for the "fillers" to be placed in the lineup room with Plaintiff. *Id.* at ¶ 68. When the lineup was ready, Detective Villa brought Gaston into the viewing area so that she could observe Plaintiff and the "fillers"; the lineup participants were unable to see Gaston during the lineup. *Id.* at ¶ 69. Prior to the lineup, Detective Barrett never informed Detective Villa that Plaintiff was the robbery suspect. *Id.* at ¶ 70. Defendants Barrett and Freeman observed the lineup conducted by Detective Villa, which occurred on February 15, 2015. *Id.* at ¶¶ 71, 72. Gaston again identified

Plaintiff as one of the people who had robbed the Radio Shack store on February 26, 2013. *Id.* at ¶ 73.

ASA Griffin was not present for the in-person lineup, but the officers told ASA Griffin that Gaston had viewed a lineup and identified Plaintiff as the offender who robbed the Radio Shack. *Id.* at ¶ 74. On February 15, 2015, ASA Griffin approved felony charges against Plaintiff. *Id.* at ¶ 75.

On that same date, Sgt. Giudice later approved paperwork to allow Defendants Barrett and Freeman to continue to hold Plaintiff while the investigation continued. *Id.* at ¶ 76. After Sgt. Giudice approved the hold, detectives presented it to Judge Brown, who approved it, allowing detectives to continue their investigation. *Id.* at ¶ 77. After reviewing the arrest report, Sgt. Giudice signed the final approval of charges because probable cause existed to show that Plaintiff committed the robbery of the Radio Shack on February 26, 2013, and also battered his girlfriend, Jalisha Dawson, on February 14, 2015. *Id.* at ¶ 78. Aside from approving the hold and finally approving the charges, Sgt. Giudice was not involved with the investigation of the domestic battery or the Radio Shack robbery; nor was he involved in Plaintiff's interviews of Plaintiff, the signing of criminal complaints, or the direct supervision of Detectives Barrett and Freeman. *Id.* at ¶ 79.

On February 15, 2015, based upon information known to him, Detective Barrett signed a criminal complaint against Plaintiff for robbery while armed with a firearm because probable cause existed that Plaintiff robbed the Radio Shack on

February 26, 2013. *Id.* at ¶ 80.[3]  Defendants Giudice and Freeman did not sign any criminal complaints against Plaintiff, but Detective Freeman did witness Barrett's signing. *Id.* at ¶ 81.  On February 20, 2015, Cook County Circuit Judge Sandra Ramos conducted a preliminary hearing and found probable cause to believe Plaintiff robbed the Radio Shack. *Id.* at ¶ 82.

After arresting Plaintiff, CPD collected a buccal swab from him, and submitted it to the ISP Crime Lab. *Id.* at ¶ 83.  On December 1, 2015, Detective Barrett learned from the ISP Crime Lab that the buccal swab taken from Plaintiff positively matched DNA found on the black and white herringbone coat. *Id.*

On December 10, 2018, Plaintiff pleaded guilty to a single count of robbery and was sentenced to six years in the Illinois Department of Corrections. *Id.* at ¶ 88. Plaintiff's conviction and sentence stand to this day. *Id.* at ¶ 89.

## **DISCUSSION**

### I.    **Summary Judgment Standard**

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment has the

---

[3] Plaintiff disputes that Gaston asked Detective Barrett to sign the criminal complaint, *see* [204] at ¶ 80, but points to no evidence in the record to support his assertion.

burden of establishing that there is no genuine dispute as to any material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating an issue of fact. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018). To satisfy that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## II. Analysis

### A. Allegedly Fraudulent Complaint

At present, Plaintiff has one pending claim: Defendants violated his rights by creating a fraudulent criminal complaint for armed robbery.[4] Based on the record, however, no evidence supports this claim. Rather, the undisputed portions of the

---

[4] Plaintiff's response brief in opposition to Defendant Griffin's motion for summary judgment, [206] at 2, refers to unspecified violations of Plaintiff's "4th, 6th, and 14th amendment[]" rights. But Plaintiff does not explain how such rights were violated, and the operative complaint does not contain any allegations supporting such claims. Furthermore, *Manuel v. Joliet*, --- U.S. ---, 137 U.S. 911 (2017) "abrogated any due-process objection to pretrial detention that has been approved by a judge." *Kuri v. City of Chicago, Illinois*, 990 F.3d 573, 575 (7th Cir. 2021).

record demonstrate that Detective Barrett signed the criminal complaint at the request of Gaston (witnessed by Freeman) based upon probable cause to show that Plaintiff was one of the offenders who robbed the Radio Shack on February 26, 2013.

As the Court observed in its ruling on the motion to dismiss, *see* [130] at 4, criminal complaints may be signed by the arresting officer on behalf of the complaining witness, so long as the officer so indicates. *See, e.g., Howard v. Cty. of Cook*, No. 10 C 0675, 2010 WL 5158103, at *3 (N.D. Ill. Dec. 14, 2010) (another person's signature on a criminal complaint is acceptable, so long as the signer so indicates) (citing *Haywood v. City of Chicago*, 378 F.3d 714, 719 (7th Cir. 2004)); *Luster v. Turner*, No. 09 C 3755, 2011 WL 1002975, at *2 n.1 (N.D. Ill. Mar. 17, 2011) (criminal complaints may be signed by the arresting officer on behalf of the complaining witness, as long as the officer indicates that he or she is signing for the complainant). And here, the record confirms that Detective Barrett did, in fact, indicate that he was signing the complaint on behalf of Gaston. *See* [189] at ¶ 80; [189-4] at 6. Thus, Plaintiff's claim against Barrett based upon the signing of the complaint fails, as does any claim against Detective Freeman for witnessing Barrett's signing of the criminal complaint.[5]

Nonetheless, Plaintiff contends that Barrett violated Illinois law when he signed the complaint on behalf of Gaston. He argues that Illinois law requires the complainant to sign a criminal complaint, *see* 725 ILCS 5/111-3(b). But even if this

---

[5] Similarly, Plaintiff has not brought forth any evidence that Defendant Giudice acted improperly in approving the criminal charges against Plaintiff. As Defendants argue, Defendant Giudice's role in the investigation was limited to approving a hold and then later approving charges. As discussed below, both actions were supported by probable cause.

17

is so (Plaintiff fails to cite any case law for this proposition), Plaintiff fails to explain how any purported failure to comply with the statute violated Plaintiff's Fourth Amendment rights. *See Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 434 (7th Cir. 1986) (even assuming that complaint was improperly sworn under Illinois law, "[n]o principle of federal law makes a properly attested complaint necessary to an arrest or a criminal prosecution."). In sum, there is nothing in the record to show that the complaint for armed robbery was improper or fraudulent.

### B. Probable Cause

As noted by Defendants, the existence of probable cause also bars Plaintiff's Fourth Amendment claim. An arrest or pretrial detention is unreasonable under the Fourth Amendment only if it is not supported by probable cause. *See Lewis v. City of Chicago*, 914 F.3d 472, 476 (7th Cir. 2019); *see also Kuri*, 990 F.3d at 575 (observing that "the Fourth Amendment supplies the basis for a claim until the suspect is either convicted or acquitted."). Unlawful detention may occur when "the police hold someone without any reason before the formal onset of a criminal proceeding" or "when the legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Manuel*, 137 S. Ct. at 918–19. There is no evidence in the record that either occurred in this case.

Probable cause is "an absolute bar to a claim for unlawful detention." *Moorer v. Valkner*, No. 18 CV 3796, 2021 WL 5998533, at *9 (N.D. Ill. Dec. 20, 2021) (citing *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015)); *see also Hart v. Mannina*, 798

18

F.3d 578, 587 (7th Cir. 2015) (claims for false arrest, false imprisonment, and malicious prosecution fail as a matter of law if probable cause exists). Probable cause exists if the facts and circumstances known to the arresting officer would allow a prudent person to believe that the suspect had committed an offense. *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019). Probable cause "does not require certainty," but "is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *Hart*, 798 F.3d at 587 (internal citation and quotation omitted).

Here, the question is not close: probable cause existed to arrest and detain Plaintiff for the Radio Shack armed robbery. Detective Barrett interviewed the victims and viewed surveillance video of the robbery. Then, with the assistance of an electronic tracking device, Detective Barrett located proceeds of the robbery and clothing worn by the robbers at a location where Plaintiff was present. DNA on one piece of the clothing, the gray herringbone coat, matched Plaintiff. Gaston, one of the victims of the robbery, identified Plaintiff in a photo array and later in an in-person lineup. Based upon this evidence, Detective Barrett possessed probable clause and signed a criminal complaint against Plaintiff for armed robbery (an offense to which Plaintiff later pled guilty). *See* [193] at 5. This record is more than sufficient to defeat Plaintiff's constitutional claim. *See Hart*, 798 F.3d at 587 ("Probable cause can be based on a single identification from a credible eyewitness."); *see also Sow v. Fortville Police Dep't*, 636 F.3d 293, 302 (7th Cir. 2011) ("When an officer receives information from a third party whom it seems reasonable to believe is telling the truth, the officer

has probable cause to effectuate an arrest."); *United States v. Johnson*, No. 3:11-CR-139, 2012 WL 1998046, at *2 (N.D. Ind. June 4, 2012) (DNA match from gloves recovered near getaway car independently supported probable cause finding).

Plaintiff does not present any admissible evidence that would refute the existence of probable cause. Instead, he contends that these facts are unrelated to his claims. *See* [222] at 1. Plaintiff insists that the investigation of the Radio Shack robbery "has no legal relevance to the illegal seizure of Plaintiff" because Plaintiff was not arrested on the day of the robbery. *Id.* Plaintiff fails to explain this theory, and any allegations along these lines are absent from his operative complaint. Amendment in this manner is improper, *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).

And, in any event, Plaintiff's theory lacks merit. Plaintiff contends that Defendants violated his rights when they questioned and arrested him for robbery in the absence of a warrant or an indictment. *See* [222] at 7–8. Plaintiff asserts that, after he was booked on the domestic battery charge, he was taken to the 8th District police station "on an investigative alert with no probable cause to arrest Plaintiff for arm[ed] robbery which was expired prior to [P]laintiff being transported . . . and [P]laintiff was never arrested or under arrest for armed robbery." *See* [205] at ¶ 2. Whether the investigative alert had expired when the police transported Plaintiff to the 8th District police station (and the record indicates that it had not, *see* [213] at ¶ 11), the investigative alert plays no constitutional role here. Plaintiff had already been seized as a matter of law when he was arrested for domestic battery. His

transfer to a different police station for questioning about the armed robbery and participation in a lineup did not constitute a "new" seizure for Fourth Amendment purposes.

Indeed, the Seventh Circuit has expressly rejected the notion that coerced participation in a lineup while already in custody constitutes a Fourth Amendment seizure. *See Swanigan v. City of Chicago*, 881 F.3d 577, 584 (7th Cir. 2018) ("A person can't be seized while seized any more than he can jump while jumping. He's either seized or not; he isn't extra seized when forced to sit in a police car or stand in a lineup."); *see also Harris v. Bowser*, 369 F. Supp. 3d 93, 102 (D.D.C. 2019) (involuntarily committed mental patient was not subjected to new seizure when he was transported for court hearing because he was already in custody "and there could be no subsequent seizures for the purposes of the Fourth Amendment"); *U.S. ex rel. Vanorsby v. Acevedo*, No. 11 C 7384, 2012 WL 3686787, at *4 (N.D. Ill. Aug. 24, 2012) (finding that inmate's transfer from Cook County jail to the custody of Chicago police to conduct a lineup was not an "arrest" or "seizure" under the Fourth Amendment and collecting cases holding that prisoners may lawfully be required to participate in lineups for cases other than the ones for which they are in custody). Here, Plaintiff was already in custody for domestic battery at the time of his transfer to the 8th District for further investigation of the armed robbery, and the legality of that arrest (in which none of the Defendants were involved) is not before the Court in this case.[6]

---

[6] Plaintiff challenged the legality of his arrest for domestic battery in a separate lawsuit, *Crowder v. Harris*, No. 20 C 5137, which was not assigned to this Court and did not come to the Court's attention until after Defendants had filed for summary judgment in this case. The City Defendants later moved to consolidate the cases, but in light of the disposition and closure of this case, that motion is denied.

Plaintiff emphasized that two years passed between the robbery and his arrest, but he fails to explain how this is material to the probable cause determination. Similarly, he contends that Gaston did not cooperate with police, *see* [222] at 8, but points to no evidence in support of this assertion. In short, his submissions do not alter the conclusion that probable existed to question and detain him in connection with the Radio Shack robbery.

Finally, the uncontested evidence further shows that detectives received judicial approval to continue holding Plaintiff so that they could continue the armed robbery investigation, and Judge Ramos later found probable cause to believe Plaintiff had participated in the Radio Shack robbery. Plaintiff offers nothing to suggest any defect in Judge Ramos' finding of probable cause at the February 20, 2015 preliminary hearing, beyond Plaintiff's conclusory allegation that Judge Ramos was not "legally authorized" to hear Detective Barrett's testimony at the hearing. *See id.* at 9. In light of the above, Plaintiff's claim fails.

### C. Absolute Prosecutorial Immunity

Defendant Griffin argues that absolute prosecutorial immunity bars Plaintiff's claims against him. This Court agrees. Absolute immunity shields prosecutors from damages when they are sued under § 1983 for initiating and prosecuting the state's case. *Imbler v. Pachtman,* 424 U.S. 409, 431 (1976). Immunity is based upon a "functional approach" that considers the nature of the prosecutor's activities in the case. *Patterson v. Burge*, 328 F. Supp. 2d 878, 892 (N.D. Ill. 2004) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)). Prosecutors are entitled to absolute

immunity when they perform functions, such as determining whether charges should be brought and initiating a prosecution, or other actions that are "intimately associated with the judicial phase of the criminal process." *Lewis v. Mills*, 677 F.3d 324, 330 (7th Cir. 2012) (quoting *Buckley,* 509 U.S. at 270). Prosecutors are not entitled to absolute immunity, however, for purely investigative acts. *Id.* Where immunity applies, it shields prosecutors "even if they act 'maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence.'" *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (quoting *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1238 (7th Cir. 1986)).

In this case, the record confirms that all of ASA Griffin's actions fell within his assignment in the Felony Review Unit. In that role, ASA Griffin reviewed and evaluated the evidence presented by detectives, interviewed the victims, and interviewed Plaintiff. The record, however, fails to contain any evidence of unlawful conduct, much less a constitutional violation, by ASA Griffin.[7] To the contrary, his actions fell squarely within his role in Felony Review Unit, and as such, he is entitled to absolute immunity as a matter of law for his actions. *See Hampton v. City of Chicago*, 349 F. Supp. 2d 1075, 1081 (N.D. Ill. 2004) (absolute immunity extended to prosecutor for conduct in "interviewing witnesses, deciding what information was

---

[7] Even though the parties dispute certain events in the Plaintiff's interview with ASA Griffin (Plaintiff claims ASA Griffin became angry at the conclusion of the interview and told Barrett, "Fuck it. Do whatever you want to do to this guy"; and Griffin denies cursing at or threatening Plaintiff in any way), there is no evidence in the record to suggest that the underlying criminal complaint was false or insufficient, let alone to show that ASA Griffin committed any constitutional violation or otherwise induced Barrett to create a fraudulent criminal complaint against Plaintiff. Even if one were to assume arguendo that ASA Griffin said what Plaintiff claims, such comments are immaterial and insufficient here to state a claim under § 1983. *Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (C.D. Ill. 1993) (citing *Patton v. Przybylski,* 822 F.2d 697, 700 (7th Cir. 1987)).

necessary for trial, preparing a felony review card, interviewing plaintiff, reading plaintiff his *Miranda* rights and approving charges against plaintiff" because "[t]hat conduct is all part of initiating a judicial proceeding"); *see also Andrews v. Burge*, 660 F. Supp. 2d 868, 878 (N.D. Ill. 2009) (prosecutor "acts within his core functions" when he evaluates evidence gathered by policy and takes statement from criminal defendant); *Horemis v. Billick*, No. 08 C 2988, 2009 WL 10740061, at *4 (N.D. Ill. Mar. 3, 2009) ("Choosing to conduct additional interviews of various witnesses and, then, to review the prior statements of those witnesses falls squarely within the realm of evaluating the evidence and preparing the state's case for trial. This type of conduct is absolutely protected.").

Beyond unsupported allegations that ASA Griffin induced Detective Barrett to create a false criminal complaint, Plaintiff makes several other claims, which similarly fail. First, Plaintiff complains that ASA Griffin approved felony charges against him on February 14, 2015 (and not on February 15, 2015), *see* [206] at 4–5. But Plaintiff fails to explain the legal significance of this contention, and as noted above, the determination of whether charges should be brought is entitled to absolute immunity, *see Anderson v. Simon*, 217 F.3d 472, 475 (7th Cir. 2000), regardless of when it occurred. Likewise, Plaintiff complains that ASA Griffin violated Illinois law when he initiated a false charge of armed robbery as count 2 "under incident number HY151105" (apparently the incident number for the domestic battery). *See* [206] at 7–8. According to Plaintiff, ASA Griffin did so with the intention of "stealing" the "arrest booking number" for the domestic battery charge, which then was abandoned.

*Id.* at 9–10.  Plaintiff cites 725 ILCS 5/111-4(a), which provides, in relevant part, that "[t]wo or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged . . . are based on the same act or on 2 or more acts which are part of the same comprehensive transaction."  In other words, according to Plaintiff, the charges of armed robbery and domestic battery were improperly joined in a single complaint.  Nevertheless, even if a violation of state law occurred (which the record fails to show), this fact does not amount to a violation of Plaintiff's constitutional rights.

Quite simply, ASA Griffin remains absolutely immune from Plaintiff's claim, and the record contains no evidence to show that ASA Griffin violated Plaintiff's constitutional rights in any way.[8]

## **CONCLUSION**

For all the foregoing reasons, the Court: grants Defendants' motions for summary judgment [187] [192]; denies Plaintiff's motions seeking sanctions for perjury [217] [218] [219]; and directs the Clerk to enter final judgment in Defendants' favor.  In light of the disposition and closure of this case, the Court denies the City Defendants' motion to consolidate [196] this case with *Crowder v. Harris*, No. 20 C 5137.

If Plaintiff wishes to appeal any portion of this ruling, he must file a notice of appeal with this Court within thirty days of the entry of judgment.  *See* Fed. R. App.

---

[8] Given the prior findings concerning the complaint, probable cause, and prosecutorial immunity, the Court need not discuss Defendants other arguments in support of summary judgment.

P. 4(a)(1). If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. If Plaintiff wishes this Court to reconsider its judgment, however, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Dated: March 23, 2022

Entered:

John Robert Blakey
United States District Judge